# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEROME BROWN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 15 C 2709 |
| ILLINOIS BELL TELEPHONE CO. d/b/a AT&T Illinois, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jerome Brown has sued his former employer Illinois Bell Telephone Company alleging violations of the Fair Labor Standards Act (FLSA), the Illinois Minimum Wage Law (IMWL), and the Illinois Wage Payment and Collection Act (IWPCA). Brown alleges that Illinois Bell improperly required him to work before and after his shifts and through his lunch breaks without proper compensation. Illinois Bell has moved to dismiss Brown's FLSA and IMWL claims to the extent they are based on allegations that predate February 2011. Illinois Bell also moves to dismiss Brown's IWPCA claim on the ground that it is preempted by federal law. The Court dismisses the IWPCA claim but declines to dismiss any part of the FLSA claim.

## Background

Brown was a cable splicer at Illinois Bell and was paid on an hourly basis. Throughout his employment, he was typically scheduled to work eight-hour shifts. Illinois Bell did not require employees to punch a clock to keep track of their working

hours. 2d Am. Compl. ¶ 24. Instead, the company required employees to report codes for each discrete task they completed. *Id.* ¶¶ 25-26. Illinois Bell assigned a predetermined amount of time to each discrete task. If an employee took longer than the assigned time to complete a task, his efficiency rating went down. *Id.* ¶¶ 27-28.

Brown alleges that the available task codes did not account for all activities he performed or hours he worked. For instance, he alleges that Illinois Bell regularly required him to perform a variety of tasks before his scheduled shift, including checking for supplies, reviewing blueprints and jobs, checking his email, and talking with his manager. Brown estimates that he performed pre-shift work roughly three to five days per week, depending on his work schedule, and that it took from twenty to thirty minutes each time. Because those tasks did not have task codes, they were unaccounted for, according to Brown. *Id.* ¶¶ 32-34.

Brown also alleges that Illinois Bell required its employees to report a thirty-minute lunch break, regardless of whether they actually took a lunch break or instead kept working during that time. *Id.* ¶ 35. He alleges that he regularly worked through lunch, completing a number of tasks that he contends were compensable, such as securing and traveling between job sites, repairing equipment, and meeting with customers. He alleges that he worked through lunch two to three times per week, depending on the number of shifts he worked in a particular week. *Id.* ¶¶ 36-37.

Finally, Brown alleges that he performed, and was required to perform, work after his shift ended for which he was not compensated. Specifically, he alleges that Illinois Bell required cable splicers to return to the company garage no more than twenty minutes before the end of the scheduled shift, irrespective of the amount of work the

cable splicer needed to perform at the garage after returning. *Id.* ¶ 38. This included paperwork which, Brown alleges, he often had to perform after the end of his scheduled shift time because twenty minutes was not enough time to complete this work. *Id.* ¶ 39. Brown says that he had to perform about fifteen minutes of post-shift work three days each week. *Id.* ¶ 40.

Brown alleges that Illinois Bell knew that he performed uncompensated work. He says that his former supervisors observed him performing work before and after his shift. He further alleges that his supervisors encouraged the uncompensated work, pressuring him to complete reportable discrete tasks without recording his time to ensure that he met Illinois Bell's efficiency expectations. *Id.* ¶¶ 41-43, 45-53.

On January 17, 2011, a number of employees at Illinois Bell—not including Brown—filed a suit against the company alleging violations of the Fair Labor Standards Act (FLSA). *See Blakes v. Ill. Bell Tel. Co.*, No. 11 C 336 (N.D. Ill.). The case was originally assigned to now-retired Judge Blanche Manning. It was later reassigned to Magistrate Judge Young Kim with the parties' consent.

The FLSA permits similarly situated employees to bring claims through a collective action via an opt-in process. *See Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Judge Kim conditionally certified a collective action on June 15, 2011 and allowed discovery to begin. Judge Kim's conditional certification included claims relating to working through lunch breaks and post-shift work.

Brown opted into the *Blakes* case on August 31, 2011. The amended complaint in that case, which was the operative version of the plaintiffs' complaint when Brown opted in, contained a general allegation that Illinois Bell violated the FLSA by

3

systematically failing to pay its cable splicers for all of the time they worked, including overtime. In their more particularized allegations, the plaintiffs alleged that Illinois Bell required its employees to complete unpaid work during lunch and after their shifts ended, but they did not confine their claim to these contentions. *See Blakes v. Ill. Bell Tel. Co.*, No. 11 C 336, dkt. no. 11 ¶ 33 ("For these reasons *and others*, Plaintiffs and similarly situated [sic] rarely work only 40 hours in a given week.").

On December 17, 2013, Judge Kim partially decertified the *Blakes* collective action, allowing only claims regarding uncompensated post-shift work to move forward collectively. He determined that aside from this, the plaintiffs' varied factual allegations did not satisfy the commonality requirement for collective action suits. The plaintiffs moved for Judge Kim to toll the statute of limitations to allow individual plaintiffs time to determine whether to pursue their non-collective claims individually. The motion noted, correctly, that Judge Kim's order had not ruled on the merits of any claims but rather had concluded only that the decertified claims could not proceed collectively. Judge Kim granted the plaintiffs' motion, staying the decertification order until February 28, 2014.

On February 28, 2014, Brown and several other opt-in plaintiffs from *Blakes* joined to file *Tinoco v. Illinois Bell Telephone Co.,* No. 14 C 1456 (N.D. Ill.). In *Tinoco*, the plaintiffs asserted an FLSA claim based on the lunch break allegations originally made in *Blake* and allegations that Illinois Bell required them to work before and after their scheduled shifts. On March 24, 2015, Chief Judge Ruben Castillo ruled that the plaintiffs' claims were not properly joined in a single suit and therefore severed the claims of all of the plaintiffs except the first-named plaintiff in the second amended

4

complaint. Judge Castillo ordered that each of the severed plaintiffs would be assigned a separate docket number. He stated that if a severed plaintiff wanted to proceed with his claims, he would have to file a separate amended complaint containing only his own claims. Judge Castillo did not, however, dismiss any claims made by any plaintiff. On July 30, 2015, Brown filed the complaint in this case.

## Discussion

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts the facts in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). To survive a motion to dismiss, a complaint must contain allegations that state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**1.     FLSA and IMWL claims**

Illinois Bell has moved to dismiss Brown's FLSA and IMWL claims to the extent they seek to recover for conduct beyond the applicable limitations period, which under the FLSA is two years, or three for willful violations, and under the IMWL is three years. 29 U.S.C. § 255(a); 820 ILCS 105/12(a). Illinois Bell argues that the statute of limitations bars Brown from asserting claims based on any factual allegations that predate February 28, 2011, three years before the filing of the *Tinoco* action. For this reason, Illinois Bell contends, Brown's claims regarding pre-shift work—which Illinois Bell argues were never part of *Blakes*—are time-barred. Illinois Bell also argues that certain

5

aspects of Brown's lunch break and post-shift work claims are time-barred to the extent they predate February 28, 2011 because those aspects of these claims were not alleged in the *Blakes* case.

Brown argues that his complaint, in its entirety, relates back to August 31, 2011, the date he opted into *Blakes*. Brown contends that *Blakes*, *Tinoco*, and the current case are all part of one continuous action. He argues that even if not all the claims he asserts in the present case were specifically laid out in *Blakes*, any added allegations are substantially similar to the allegations made in *Blakes*. For this reason, he argues, all of these claims—actually these parts of his claims—relate back to the date he opted into the *Blakes* case.

A number of judges in this district have dealt with these same issues in cases stemming from *Blakes* and *Tinoco*, with varying results. The Court has considered all of these decisions and finds Judge Amy St. Eve's decision in *Ballard v. Illinois Bell Telephone Co.*, No. 15 C 2687, 2015 WL 6407574 (N.D. Ill. Oct. 21, 2015), to be the most persuasive among them. Judge St. Eve concluded that each of the claims made in separate complaint filed by the plaintiff in *Ballard* related back to the date the plaintiff opted into *Blakes*. Judge St. Eve reasoned that Ballard's suit was not a separate lawsuit but rather was part of *Blakes*, and thus the relation-back rule in Federal Rule of Civil Procedure 15(c) applied. *See id.* at *3.

This Court agrees with *Ballard*. In this regard, it is worth noting that *Blakes* was not a Rule 23 class action in which Brown was an unnamed party; it was a collective action that he affirmatively joined. In a collective action under the FLSA—in contrast with a class action certified under Rule 23—each plaintiff is an actual party to the case

6

and asserts claims on his own behalf. In other words, Brown was a party to the *Blakes* case as of August 31, 2011.

Judge Kim's decertification of certain claims in *Blakes* did not adjudicate any of those claims. Rather, it was simply a determination that they could not be pursued as part of a collective action. "When a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs." *Alvarez*, 605 F.3d at 450. A decertification order does not dismiss any plaintiff's claims; rather it determines that they must proceed as separate claims for each plaintiff rather than collectively. Thus when Brown, together with other plaintiffs, filed their claims in the *Tinoco* case, this did not amount to the filing of a new lawsuit. Rather, it was the continuation of Brown's claims that he asserted in the *Blakes* case.

The same is true of Judge Castillo's order in *Tinoco* finding that the claims of the plaintiffs in that case (including Brown) were misjoined. Judge Castillo did not dismiss any plaintiff's claims. Rather, he simply determined they had to proceed separately, and he assigned each plaintiff his or her own separate docket number.[1]

Given these circumstances, there is no basis to say that the present case constitutes a separate suit from either *Tinoco* or *Blakes*. Brown's present suit is a continuation of *Tinoco*, just as it (like *Tinoco*) is a continuation of *Blakes*. The administrative detail of whether the case is proceeding under a separate docket number does not change the fact that Brown has asserted overtime pay claims against Illinois Bell consistently since the day he joined the *Blakes* case. For these reasons, the Court

---

[1] That likely is how things ought to have been handled when *Blakes* was decertified, because that decision, too, only concerned whether the claims were properly *joined*, not whether they were properly *brought*.

7

concludes that the relation back doctrine set forth in Federal Rule of Civil Procedure 15(c)(1)(A) applies.

The Court also concludes, as did Judge St. Eve in *Ballard*, that all of Brown's claims relate back to the date he joined the *Blakes* collective action, specifically, August 31, 2011. As an opt-in plaintiff in *Blakes*, Brown is considered to have filed suit on the day his opt-in consent form was filed. 29 U.S.C. § 256(b).

The relation back rule does not require that a claim be based on an identical theory of recovery. Instead, "an amendment relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The determination is not formulaic: "[t]he criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006).

The Court concludes this standard is met with regard to all of Brown's allegations that Illinois Bell contends were not made in *Blakes*. For example, that case put Illinois Bell on notice of a claim to the effect that Brown (and others) were not paid for time they had to work over lunch, not just bits and pieces of such a claim. The fact that there might be different reasons why a cable splitter worked over lunch does not make the current claim arise from a different transaction or occurrence as the claim originally made in *Blakes*. The same is true of post-shift work; the amended complaint in *Blakes* squarely alleged that cable splitters were performing post-shift work for which they were

8

not properly compensated. The fact that this might have been for different reasons at different times does not alter the fact that the present claim arises from the same transaction or occurrence as the earlier claim.

Finally, the same is true of Brown's allegations about uncompensated pre-shift work, even though there was no specific allegation to that effect in the original complaint. As the Court has noted, the amended complaint in *Blakes* specifically referenced lunchtime and post-shift work, but it also stated that the FLSA was stated for these *and other* reasons, and there was a general allegation of failure to properly compensate cable splitters for all the time they performed work. This is sufficient to rope in, as part of the same conduct, transaction, or occurrence, Blakes' contention that he had to perform pre-shift work for which he was not paid.

In sum, Brown has had a continuous action against Illinois Bell under the FLSA for unpaid overtime from the date he joined *Blakes* through the present. His claims against Illinois Bell were never dismissed on their merits. Rather, there was simply a determination—actually, two determinations—that they could not be pursued as part of a larger action including other plaintiffs. The Court concludes that Brown's allegations in this case relate back to the date he opted into *Blakes*, August 31, 2011. The Court therefore denies Illinois Bell's motion to dismiss Brown's FLSA claim.

**2.    IWPCA claim**

Brown also asserts a claim under the IWPCA. This statute allows a worker to record wages owed under an employment contract or agreement. 820 ILCS 115/2. Brown alleges that Illinois Bell agreed to pay him overtime for all hours worked in excess of forty in a given week and that its failure to do so entitles him to relief under

9

the IWPCA. Brown's complaint cites two possible contracts or agreements: a collective bargaining agreement (CBA) between the company and the International Brotherhood of Electronical workers, and certain written Illinois Bell employment policies.

Illinois Bell argues that Brown's IWPCA claim is preempted by federal law to the extent it is premised on the CBA. Under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, a state law claim is preempted if it depends on the interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 403 (1988). Illinois Bell argues that the factual allegations underlying Brown's IWPCA claim—that he was not paid the appropriate amount of overtime wages—depends on an interpretation of the collective bargaining agreement. Brown acknowledges that his complaint makes reference to the CBA, *see* 2d Am. Compl. ¶21, but he contends that his claim does not require an interpretation of its provisions in a way that would invoke preemption.

The two CBAs at issue, from 2004 and 2009, set out a complex structure of payment of workers governed by the CBAs' terms. To illustrate, section 18.21 of the 2004 CBA required Illinois Bell to pay an employee a ten dollar meal allowance if he was required to work three or more additional hours on a regular shift, twelve hours on a prearranged shift, or eleven consecutive hours including travel time which are paid at the overtime rate. Section 18.22 required Illinois Bell to pay employees if they were contacted outside of work. If the employee was required to go into work, Illinois Bell had to pay him a minimum of two hours overtime pay, unless the call occurred less than two hours before the start of his next shift. If the off-day or off-hours call was authorized by management and meant to discuss matters related to the job, Illinois Bell had to pay

the employee sixty-five dollars. But if the call was prompted by error or omission, no payment was required. These are but a few examples. As Illinois Bell argues, to the extent the IWPCA claim is based on the CBA, the Court would have to address how the various provisions under the CBA apply and exactly what compensation is called for. The Court agrees with Illinois Bell that because an employee's pay rate depends on the methodology set forth in the CBA and the application of that methodology requires an interpretation of the CBA, the IWPCA claim is preempted to the extent it is premised on the CBA.

Brown also cites certain Illinois Bell policies and argues that those internal policies save him from LMRA preemption. Am. Compl. ¶¶ 22-23. Specifically, Brown says that the company's code of business conduct "guarantees that all overtime hours worked by non-exempt employees will be paid" and that its policy on reporting time "assures . . . employees that, even if non-exempt employees work overtime without prior approval, those employees will be paid for that time." *Id.* ¶ 23.

Illinois Bell argues that these policies are not "contracts or agreements" within the meaning of the IWPCA. The code of conduct includes a disclaimer stating that it is not a contract and creates no contractual rights. This is sufficient to preclude it from serving as a "contract" under the IWPCA, but not necessarily from serving as an "agreement." *See generally Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 659 (N.D. Ill. 2012); *Osorio v. The Tile Shop, LLC*, No. 15 C 15, 2015 WL 7688442, at *2 (N.D. Ill. Nov. 27, 2015) (Kennelly, J.). Under the IWPCA, "[a]n 'agreement' is broader than a contract and requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and

accompanying legal protections of a contract." *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243, 249, 807 N.E.2d 666, 671 (2004); *see also, Landers-Scelfo v. Corporate Office Sys., Inc.*, 356 Ill. App. 3d 1060, 1067, 827 N.E.2d 1051, 1059 (2005). In *Osorio*, this Court concluded that an offer letter containing a non-contractual disclaimer nonetheless amounted to an agreement within the meaning of the IWPCA because both parties signed the document and manifested an intent to abide by its terms. Here, however, there is no similar indication of *mutual* assent, at least none that is alleged in Brown's complaint. The Court therefore dismisses Brown's IWPCA claim for failure to state a claim.

## Conclusion

For the foregoing reasons, the Court dismisses plaintiff's claim under the IWPCA but otherwise denies defendant's motion to dismiss [dkt. no. 18].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 19, 2016